## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __99999__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __11001__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
**Covington & Burling   (202) 662-6000**
**1201 Pennsylvania Avenue, N.W.**
**Washington, DC   20004**

ATTORNEYS (IF KNOWN)
**U.S. Department of Justice**

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ☐ A. Antitrust | ☐ B. Personal Injury/ Malpractice | ☐ C. Administrative Agency Review | ☐ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

### ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ☒ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☒ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student<br>Loans (excluding veterans) |
| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting<br>Rights Act) |

## V. ORIGIN

☒ 1 Original
Proceeding  ☐ 2 Removed
from State
Court  ☐ 3 Remanded from
Appellate Court  ☐ 4 Reinstated
or Reopened  ☐ 5 Transferred from
another district
(specify)  ☐ Multi district
Litigation  ☐ 7Appeal to
District Judge
from Mag. Judge

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. § 2241 - Habeas corpus petition challenging the legality of Petitioner's detention

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐  ACTION UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint<br>**JURY DEMAND:** ☐ YES    ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S)**
**IF ANY**    (See instruction)    ☒ YES    ☐ NO    If yes, please complete related case form.

DATE **5/24/05**    SIGNATURE OF ATTORNEY OF RECORD    *David H. Remes*

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

CLERK'S OFFICE                                    CO-932
UNITED STATES DISTRICT COURT                      Rev. 4/96
FOR THE DISTRICT OF COLUMBIA

NOTICE OF DESIGNATION OF RELATED CIVIL CASES PENDING
IN THIS OR ANY OTHER UNITED STATES COURT

Civil Action No. _____
(To be supplied by the Clerk)

**NOTICE TO PARTIES:**

Pursuant to Rule 405(b)(2), you are required to prepare and submit this form at the time of filing any civil action which is related to any pending cases or which involves the same parties and relates to the same subject matter of any dismissed related cases. This form must be prepared in sufficient quantity to provide one copy for the Clerk's records, one copy for the Judge to whom the cases is assigned and one copy for each defendant, so that you must prepare 3 copies for a one defendant case, 4 copies for a two defendant case, etc.

**NOTICE TO DEFENDANT:**

Rule 405(b)(2) of this Court requires that you serve upon the plaintiff and file with your first responsive pleading or motion any objection you have to the related case designation.

**NOTICE TO ALL COUNSEL**

Rule 405(b)(3) of this Court requires that as soon as an attorney for a party becomes aware of the existence of a related case or cases, such attorney shall immediately notify, in writing, the Judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties.

_____

The plaintiff, defendant or counsel must complete the following:

I.   RELATIONSHIP OF NEW CASE TO PENDING RELATED CASE(S).

A new case is deemed related to a case pending in this or another U.S. Court if the new case:  [Check appropriate box(es) below.]

[ ]    (a)    relates to common property

[X]    (b)    involves common issues of fact

[X]    (c)    grows out of the same event or transaction

[ ]    (d)    involves the validity or infringement of the same patent

[ ]    (e)    is filed by the same pro se litigant

2.   RELATIONSHIP OF NEW CASE TO DISMISSED RELATED CASE(ES)

A new case is deemed related to a case dismissed, with or without prejudice, in this or any other U.S. Court, if the new case involves the <u>same</u> parties and <u>same</u> subject matter.

Check box if new case is related to a dismissed case:  [ ]

3.   NAME THE UNITED STATES COURT IN WHICH THE RELATED CASE IS FILED (IF OTHER THAN THIS COURT):

_____

4.   CAPTION AND CASE NUMBER OF RELATED CASE(ES).  IF MORE ROOM IS NEED PLEASE USE OTHER SIDE.

| Abdah | v. | Bush | C.A. No. | 04-1254 |

_____                          _____

5/24/05                 *David H. Reines*              Judge Kennedy

DATE                    Signature of Plaintiff /Defendant (or counsel)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------------- X

ABDULSALAM ALI ABDULRAHMAN AL-
HELA, a.k.a. Abd al-Salam Ali al-Hila,
      Detainee, Camp Delta,
      Guantánamo Bay Naval Station,
      Guantánamo Bay, Cuba; and

ABDULWAHAB ALI ABDULRAHMAN AL-
HELA,
      as Next Friend of ABDULSALAM ALI
      ABDULRAHMAN AL-HELA,

           *Petitioners*,

    *v.*

GEORGE W. BUSH,
      President of the United States
      The White House
      1600 Pennsylvania Ave., N.W.
      Washington, D.C. 20500;

DONALD RUMSFELD,
      Secretary, United States
      Department of Defense
      1000 Defense Pentagon
      Washington, D.C. 20301-1000;

ARMY BRIG. GEN. JAY HOOD,
      Commander, Joint Task Force – GTMO
      JTF-GTMO
      APO AE 09360; and

ARMY COL. BRICE GYURISKO,
      Commander, Joint Detention
      Operations Group – JTF-GTMO,
      JTF-GTMO
      APO AE 09360,

           *Respondents*.

*All Respondents are sued in their*
*official capacities.*

-------------------------------------------------------------------- X

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____

## PETITION FOR WRIT OF HABEAS CORPUS

1.  Petitioner Abdulsalam Ali Abdulrahman Al-Hela ("Petitioner") seeks a Writ of Habeas Corpus.  He is a citizen of Yemen being held, virtually *incommunicado* and without access to counsel, in Respondents' unlawful custody in Camp Delta, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba ("Guantánamo Bay" or "Guantánamo").

2.  Petitioner Al-Hela acts on his own behalf and through his Next Friend and brother, Abdulwahab Ali Abdulrahman Al-Hela ("Next Friend"), who is also a citizen of Yemen. *See* Authorization of Abdulwahab Ali Abdulrahman Al-Hela (Ex. A); Authorization of Center for Constitutional Rights (Ex. B).

## I. JURISDICTION

3.  Petitioner Al-Hela brings this action under 28 U.S.C. §§ 2241 and 2242.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1651, 2201 and 2202; 5 U.S.C. § 702; the Fifth, Sixth and Eighth Amendments to the United States Constitution; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; and customary international law.  Insofar as he seeks declaratory relief, Petitioner also relies on Federal Rule of Civil Procedure 57.

4.  This Court has authority under 28 U.S.C. § 2241 to grant the Writ of Habeas Corpus and, under 28 U.S.C. § 2242, to entertain the Petition filed by Abdulwahab Ali Abdulrahman Al-Hela as Next Friend to Petitioner Al-Hela.

5.  Pursuant to 28 U.S.C. § 2201, this Court is empowered to declare the rights and other legal relations of the parties herein and, under 28 U.S.C. § 2202, to effectuate and enforce declaratory relief by all necessary and proper means, as this case involves an actual controversy within the Court's jurisdiction.

## II. VENUE

6.      Venue is proper in the United States District Court for the District of Columbia because at least one Respondent resides in the district, a substantial part of the events or omissions giving rise to the claim occurred in the district, at least one Respondent may be found in the district, and all Respondents are either officers or employees of the United States or an agency thereof acting in their official capacities. *See* 28 U.S.C. §§ 1391(b); 1391(e).

## III. THE PARTIES

### A. Petitioner and Next Friend

7.      Petitioner Al-Hela is presently incarcerated and held in Respondents' unlawful custody at Guantánamo Bay, Cuba.

8.      Because Petitioner Al-Hela has been denied access to legal counsel and to the courts of the United States, his brother acts as Next Friend for him in this proceeding.

### B. Respondents

9.      Respondent George W. Bush is the President of the United States and Commander in Chief of the United States military.  It is pursuant to the November 13, 2001 Military Order promulgated by Respondent Bush, *see* ¶¶ 27–30 *infra*, or alternatively under his authority as Commander in Chief and under the laws and usages of war, that Petitioner is being detained.  Accordingly, Respondent Bush is ultimately responsible for Petitioner's unlawful detention.

10.     Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to either the November 13, 2001 Military Order or the President's authority as Commander in Chief and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining the custody and control of Petitioner.

11.     Respondent Army Brig. Gen. Jay Hood is the Commander of Joint Task Force–GTMO, the task force running the detention operation at Guantánamo. He has supervisory responsibility for Petitioner.

12.     Respondent Col. Brice Gyurisko is the Commander of the Joint Detention Operations Group and the Joint Task Force–GTMO detention camps, including the United States facility where Petitioner Al-Hela is presently held. He is the immediate custodian responsible for Petitioner's detention.

## IV. STATEMENT OF FACTS

13.     Petitioner Al-Hela is a citizen of Yemen. He is married and has three children who are ages eight, six and four. Mr. Al-Hela is a businessman and a Yemeni intelligence colonel. Previously, Mr. Al-Hela managed a pharmaceutical firm and served as a representative to Arab Contractors, Egypt's largest construction firm.

### A. Petitioner's Detention

14.     Petitioner seeks to enforce his right to a judicial determination of whether he is being legally confined at Guantánamo and whether there is a factual basis for Respondents' determination that he is an "enemy combatant."

15.     Petitioner is not and never has been an enemy alien, a lawful or unlawful belligerent, a terrorist, or a combatant of any kind. He is not and never has been an "enemy combatant." He is not "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

16.     Aside from an unsupported assertion that all detainees at Guantánamo Bay are enemy combatants, Respondents have advanced no justification for the detention of Petitioner.

Respondents have failed even to publicly acknowledge that they are detaining Mr. Al-Hela at Guantánamo Bay.

17.    Respondents have produced no evidence linking Petitioner Al-Hela to al Qaeda or any other organization or persons involved in either the terrorist attacks on September 11, 2001, or any other terrorist attack on the United States or its citizens. He is not a member of any organization that planned, authorized, committed or aided the terrorist attacks against the United States on September 11, 2001, or any other terrorist attack on the United States or its citizens.

### B. Petitioner's Arrest

18.    Respondents have produced no information concerning the circumstances of the seizure of Petitioner. The limited information available indicates that Mr. Al-Hela was seized by unknown authorities without warning and without procedural protections during a business trip to Cairo, Egypt and was later transferred to United States custody in Kabul, Afghanistan and eventually to detention at Guantánamo Bay, Cuba.

19.    On information and belief, Mr. Al-Hela traveled to Cairo on September 19, 2002, for business purposes related to his work for Arab Contractors.

20.    Petitioner Al-Hela telephoned his family on September 24, 2002, but sounded nervous and strange. According to his brother, he told his family he had been invited to a meeting with some people and that "the atmosphere is cloudy and dark here." *See* Megan K. Stack, *Case Allegedly Shows U.S. Practice of Secret Arrests*, L.A. Times, Mar. 30, 2005. His family tried but could no longer reach him by phone after that date. They did not hear from him for one and one-half years.

21.    On information and belief, Petitioner Al-Hela was seized during his September 2002 business trip to Cairo and was transported to Baku, Azerbaijan on or about September 28, 2002. Mr. Al-Hela was later transferred to Baghram Airbase in Kabul, Afghanistan. He

4

was held there in the custody of the United States military for approximately sixteen months until he was moved to Guantánamo Bay.

22.   The Yemeni embassy in Islamabad, Pakistan received a letter from Mr. Al-Hela on April 14, 2004.  The letter was dated January 12, 2004 and stated that Mr. Al-Hela had been kidnapped in Cairo by Egyptian intelligence and then detained by the CIA in Afghanistan for sixteen months.  Petitioner Al-Hela reportedly wrote:  "My brother, Mr. Ambassador, I am writing this letter from a dark prison.  I don't know why I am in jail.  I am a businessman with a good reputation, who did a lot for this country…. I have been put in jail from Afghanistan by the Americans, after I was arrested in the Arab Republic of Egypt during a brief business trip.  The CIA conspired with the Egyptian Mukhabarrat, making false allegations and threats against me, so as to justify their crime of kidnapping me from Egypt and locking me up in this Afghani prison."  *Cairo to Kabul to Guantanamo*, Human Rights Watch, Mar. 30, 2005.

23.   In July 2004, Mr. Al-Hela's family received a letter sent from Kabul via the Red Cross – the first communication they had received from him in one and a half years.  Two months later, the family received another letter from Mr. Al-Hela via the Red Cross, which was sent from Guantánamo Bay.

24.   Other prisoners detained or formerly detained at Guantánamo have reported similar experiences of having been seized without warning and without procedural protections far from the United States or Afghanistan and eventually transported to United States custody in Kabul, Afghanistan and Guantánamo Bay, Cuba.  *See* Raymond Bonner, *Detainee Says He Was Tortured In U.S. Custody*, N.Y. Times, Feb. 13, 2005; Don Van Natta Jr. & Soad Mekhennet, *German's Claim of Kidnapping Brings Investigation of U.S. Link*, N.Y. Times, Jan. 9, 2005.

**B.  The Joint Resolution**

5

25.    In the wake of the September 11, 2001 attacks, the United States, at the direction of Respondent Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized the President to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons."  Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Jan. 18, 2001).

26.    Neither the Respondents nor any other agents of the United States government have produced any information to support any link between Petitioner and organizations or persons involved in the terrorist attacks on September 11, 2001, or any other terrorist attack attributed by the United States to Al Qaeda or any other international terrorist group.  The limited information available indicates that Petitioner was in Cairo, Egypt for reasons unrelated to the activities of Al Qaeda or any other terror organization and that he was seized there and transferred to United States military custody in 2002.

### C. The Detention Order

27.    On November 13, 2001, Respondent Bush issued a Military Order authorizing indefinite detention without due process of law.  The Order authorizes Respondent Rumsfeld to detain anyone Respondent Bush has "reason to believe":

    i.      is or was a member of the organization known as al Qaida;

    ii.     has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

    iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

Military Order of November 13, 2001.

28.   Respondent Bush must make this determination in writing.   The Order was neither authorized nor directed by Congress, and it is beyond the scope of the Joint Resolution of September 18, 2001.

29.   The Military Order vests the President with complete discretion to identify the individuals that fall within its scope.  It establishes no standards governing the use of his discretion.   Once a person has been detained, the Order contains no provision for the person to be notified of the charges he may face.  Instead, the Order authorizes detainees to be held without charges.  It contains no provision for detainees to be notified of their rights under domestic and international law, and provides neither the right to counsel nor the right to consular access.  It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and no provision for appeal to an Article III or any other court.  In fact, the Order expressly bars any form of judicial review.  The Order authorizes indefinite and unreviewable detention, based on nothing more than the President's written determination that an individual is subject to its terms.

30.   The Military Order authorizes the use of military commissions to try noncitizens accused of terrorism and other war crimes.  It establishes no guarantee that charges will be promptly brought, that these charges will be made known to the accused and his counsel, or that a speedy trial providing adequate legal process will be afforded to determine guilt on such charges or their legal validity under domestic or international law.  It permits prolonged pre-commission detention in solitary confinement, risking long-term psychological injury.

31.   Petitioner Al-Hela is not properly subject to the Military Order.

32.   The Military Order was promulgated in the United States and in this judicial district; the decision to detain and designate Petitioner Al-Hela was made by Respondents in the United States and in this judicial district; the decision to detain Petitioner at Guantánamo was made in the United States and in this judicial district; and the decision to continue

7

detaining Petitioner was, and is, being made by Respondents in the United States and in this judicial district.

33.   In the related case of *Rasul v. Bush*, 215 F. Supp. 2d 55 (D.D.C. 2002), Respondents contended that the petitioners in that case were being detained, not pursuant to the President's Military Order, but under the President's authority as Commander in Chief and under the laws and usages of war.  However, Petitioner in the instant matter was not arrested or detained by the United States in the course of the armed conflict.

34.   Moreover, Petitioner appears to have been seized in Egypt, far from any battlefield. Accordingly, Petitioner Al-Hela is not properly detained under the President's authority as Commander in Chief or under the laws and usages of war.

### D.  Guantánamo Bay Naval Station

35.   On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray, at the United States Naval Base, in Guantánamo Bay, Cuba.  In April 2002, all prisoners were transferred to Camp Delta, a more permanent prison facility in Guantánamo.  Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

36.   Detainees incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

37.   On a precise date unknown to counsel for Petitioner, but known to Respondents, the United States transferred Petitioner to Guantánamo Bay Naval Station, where upon information and belief, he currently resides in the custody and control of Respondents.

### E.  Conditions of Detention at Guantánamo

38.   Upon information and belief, the United States has held detainees at Guantánamo Bay Naval Station virtually *incommunicado* under conditions that violate their constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.*, United Nations Press Release, *United*

*Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees*, Feb. 4, 2005; International Committee of the Red Cross, Press Release, *The ICRC's Work at Guantánamo Bay*, Nov. 30, 2004; International Committee of the Red Cross, *Operational Update, US Detention Related to the Events of September 11, 2001 and Its Aftermath – the Role of the ICRC*, July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, Oct. 27, 2004, at 22, *available at* http://web.amnesty.org/library/Index/ENGAMR511452004; National Association of Criminal Defense Lawyers, *Abuse of Detainees at Guantánamo Bay*, Nov. 2004, at 4–5.

39.     Many of these violations – including isolation for up to thirty days, twenty-eight hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, Dep't of Defense, to Secretary of Defense (Nov. 27, 2002); Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations (Apr. 4, 2003).

40.     On information and belief, Petitioner Al-Hela has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, although he has not been charged with an offense or notified of any pending or contemplated charges.  He has not appeared before a lawful military or civilian tribunal and has not been provided counsel or the means to contact and obtain counsel.

41.     Petitioner Al-Hela has not been informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, or customary international law.  Respondents have taken the

position that Petitioner Al-Hela should not be told of these rights. As a result, Petitioner Al-Hela is completely unable either to protect or to vindicate his rights under domestic and international law.

42. In a confidential report to the United States government, the ICRC charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, *Red Cross Finds Detainee Abuse in Guantánamo*, N.Y. Times, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche & Jonathan H. Marks, *When Doctors Go to War*, New England Journal of Medicine, Jan. 6, 2005, at 3–4. Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. Amnesty International, *Guantánamo: An Icon of Lawlessness*, Jan. 6, 2005, at 3–5; *see also* Neil A. Lewis, *Fresh Details Emerge on Harsh Methods at Guantánamo*, N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig, *Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, Wash. Post, Dec. 26, 2004, at A1; Dan Eggen & R. Jeffrey Smith, *FBI Agents Allege Abuse of Detainees at Guantánamo Bay*, Wash. Post, Dec. 21, 2004, at A1; Neil A. Lewis, *F.B.I. Memos Criticized Practices at Guantánamo*, N.Y. Times, Dec. 7, 2004, at A19.

43. Newspapers have reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. Carol D. Lenning & Dana Priest, *Detainees Accuse Female Interrogators*, Wash. Post, Feb. 10, 2005, at A1; Associated Press, *Gitmo Soldier Details Sexual Tactics*, Jan. 27, 2005. Newspapers have also widely reported allegations of religious abuses, including the confiscation of prayer items, disrespect of the Koran, and

taking away the detainees' trousers with the knowledge that this would prevent them from praying. Carol Rosenberg, *Guantanamo Bay: Captives Allege Religious Abuse*, Miami Herald, Mar. 6, 2005, at A1. Some of the sexual and religious allegations subsequently have been confirmed by government investigators. Neil A. Lewis & Eric Schmitt, *Inquiry Finds Abuses at Guantanamo Bay*, N.Y. Times, May 1, 2005.

44.    The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical, psychological, and religious abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, *Lawyers Describe Guantánamo Detainees*, Seattle Post-Intelligencer, Jan. 19, 2005; Neil A. Lewis, *U.S. Eroding Inmates' Trust at Cuba Base, Lawyers Say*, N.Y. Times, Mar. 8, 2005, at A18.

45.    Respondents, acting individually or through their agents, have stated that whatever limitations apply to coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense do not apply to interrogations conducted by agents of the CIA or other entities under President Bush. Eric Lichtblau, *Gonzales Says '02 Policy on Detainees Doesn't Bind CIA*, N.Y. Times, Jan. 19, 2005, at A17; Dan Eggen & Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells Senate*, Wash. Post, Jan. 18, 2005, at A4.

46.    Counsel for Respondents maintain that the United States may hold the detainees at Guantánamo under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Mot. to Dismiss at 22–24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, *Long-Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1. Moreover, the Government has recently acknowledged plans to begin constructing a new, more permanent facility at Guantánamo. Christopher Cooper,

*In Guantánamo, Prisoners Languish in a Sea of Red Tape*, Wall Street. J., Jan. 26, 2005, at A1; Associated Press, *Guantánamo Takes on the Look of Permanency*, Jan. 9, 2005.

47.    According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo Bay indefinitely.  *See* Department of Defense Press Background Briefing of July 3, 2003, *available at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html.

### E.  Combatant Status Review Tribunal

48.    On July 7, 2004, Deputy Secretary of Defense Paul Wolfowitz signed an Order directing the Secretary of the Navy to establish a Combatant Status Review Tribunal ("CSRT") to be convened at Guantánamo Bay.  *See* Memorandum for the Secretary of the Navy, July 7, 2004 ("Memorandum").   The ostensible purpose of the CSRT is to determine on a case-by-case basis whether a detainee is "properly detained as an enemy combatant," *id.* at ¶ g.12, notwithstanding Deputy Secretary Wolfowitz's assertion that each detainee has already "been determined to be an enemy combatant through multiple levels of review by officers of the Department of Defense," *id.* at ¶ a.

49.    The procedures ordered by Deputy Secretary Wolfowitz for the CSRT are plainly deficient, failing to provide due process protection for the detainees as a whole and for Petitioner in particular.   For instance, notice of the factual basis for a detainee's designation as an "enemy combatant" is provided to the detainee only if the factual basis is unclassified, Memorandum at ¶ g.1, and detainees' counsel may not be present at the CSRT hearings.   Instead, the detainees are offered the assistance of "Personal Representatives," *id.* at ¶ c – a non-lawyer military officer whose conversations with individual detainees are not privileged and will, on information and belief, be monitored by the United States military.  These factors alone are sufficient to establish a violation of due process.  *See In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443, 472 (D.D.C. 2005).  Moreover, the panels are not bound by the rules of evidence applicable in a court

12

of law, Memorandum at ¶ 9, and "enemy combatant" status is determined only under a preponderance-of-the-evidence standard, with a rebuttable presumption in favor of the government's evidence, *id.* at ¶ g.12. The procedures also violate due process to the extent that they rely upon statements obtained under torture or otherwise involuntarily as evidence and because they employ a vague and overbroad definition of "enemy combatant." *See In re Guantanamo Detainee Cases*, 355 F. Supp. 2d at 472, 474.

## V. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**(Unlawful Detention)**

50.    Petitioner Al-Hela and his Next Friend incorporate paragraphs 1–49 by reference.

51.    Petitioner is not, and never has been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind. Petitioner is not, and never has been, an "enemy combatant." He was not "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004). Petitioner has committed no violation of domestic, foreign, or international law. There is no basis whatsoever in law for Petitioner's detention.

### SECOND CLAIM FOR RELIEF
**(Due Process – Fifth Amendment to the United States Constitution)**

52.    Petitioner and his Next Friend incorporate paragraphs 1–51 by reference.

53.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the Fifth Amendment to the United States Constitution. Respondent Bush has ordered the prolonged, indefinite and arbitrary detention of individuals without Due Process of Law. Respondents Rumsfeld, Hood and Gyurisko are likewise acting in violation of the Fifth Amendment since they act at the President's direction. On its face, the Executive Order violates the Fifth Amendment.

### THIRD CLAIM FOR RELIEF
**(Due Process – Fifth Amendment to the United States Constitution)**

54.    Petitioner and his Next Friend incorporate paragraphs 1–53 by reference.

55.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner to be free from arbitrary, prolonged and indefinite detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.  The Executive Order, as applied to Petitioner, violates the Fifth Amendment.

### FOURTH CLAIM FOR RELIEF
**(Due Process – International Law)**

56.    Petitioner and his Next Friend incorporate paragraphs 1–55 by reference.

57.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate customary international law, the Third and Fourth Geneva Conventions, Articles 9 and 14 of the International Covenant on Civil and Political Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on the Rights and Duties of Man.  On its face, the Executive Order violates international law.

### FIFTH CLAIM FOR RELIEF
**(Due Process – International Law)**

58.    Petitioner and his Next Friend incorporate paragraphs 1–57 by reference.

59.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner to be free from arbitrary, prolonged and indefinite detention, in violation of customary international law, the Third and Fourth Geneva Conventions, Articles 9 and 14 of the International Covenant on Civil and Political Rights, and Articles XXVIII, XXV and XXVI of the American Declaration on the Rights and Duties of Man.  Respondent Bush has ordered the prolonged, indefinite and arbitrary detention of Petitioner, without legal process, in violation of binding obligations of the United States under international law.  Respondents Rumsfeld, Hood and Gyurisko are likewise acting in violation of international law, since they act at the

President's direction.  The Executive Order, as applied to Petitioner, violates these and other binding obligations of the United States under international law.

## SIXTH CLAIM FOR RELIEF
### (Due Process – Failure to Comply with United States
### Military Regulations and International Humanitarian Law)

60.   Petitioner and his Next Friend incorporate paragraphs 1–59 by reference.

61.   By the actions described above, Respondents, acting under color of law, have violated and continue to violate the rights accorded to persons seized by the United States Military in times of armed conflict, as established by, *inter alia*, the regulations of the United States Military, Articles 4 and 5 of the Third Geneva Convention, the Fourth Geneva Convention and customary international law.

## SEVENTH CLAIM FOR RELIEF
### (War Powers Clause)

62.   Petitioner and his Next Friend incorporate paragraphs 1–61 by reference.

63.   By the actions described above, Respondents, acting under color of law, have exceeded the constitutional authority of the Executive and have violated and continue to violate the War Powers Clause by ordering the prolonged and indefinite detention of Petitioner without congressional authorization.

## EIGHTH CLAIM FOR RELIEF
### (Suspension of the Writ)

64.   Petitioner and his Next Friend incorporate paragraphs 1–63 by reference.

65.   To the extent the Executive Order of November 13, 2001 disallows any challenge to the legality of Petitioner's detention by way of habeas corpus, the Order and its enforcement constitute an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution.  The actions of the Respondents in claiming the legal right to detain Petitioner without judicial authorization or review constitute a suspension of the Writ of Habeas Corpus in violation of Article I of the United States Constitution.

## NINTH CLAIM FOR RELIEF
**(Arbitrary and Unlawful Detention – Violation of the Administrative Procedures Act)**

66.   Petitioner and his Next Friend incorporate paragraphs 1–65 by reference.

67.   By detaining Petitioner for the duration and in the manner described herein, Respondents have arbitrarily, unlawfully and unconstitutionally detained Petitioner in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

## TENTH CLAIM FOR RELIEF
**(Violation of Due Process and Convention Against Torture—Rendition)**

68.   Petitioner and his Next Friend incorporate paragraphs 1–67 by reference.

69.   Upon information and belief, Petitioner Al-Hela is at risk of being rendered, expelled, or returned without lawful procedures to a country that engages in torture.  Such transfer creates a foreseeable and direct risk that he will be subjected to torture in violation of the Due Process Clause of the Fifth Amendment to the Constitution, the Convention Against Torture, and the 1954 Convention Relating to the Status of Refugees.

70.   Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief that the Court may deem appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner and his Next Friend pray for relief as follows:

1.   Grant Abdulwahab Ali Abdulrahman Al-Hela status as Next Friend of Petitioner Al-Hela;

2.   Order and declare the Executive Order of November 13, 2001 unlawful as a violation of the Fifth Amendment to the United States Constitution; the War Powers Clause of Article I of the United States Constitution; the Administrative Procedures Act, 5 U.S.C. § 702; customary international law; the International Covenant on Civil and Political Rights; and the American Declaration on the Rights and Duties of Man;

16

3.  Order and declare that Petitioner's indefinite detention is in violation of the Fifth Amendment to the United States Constitution; customary international law; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; the regulations of the United States Military; the Geneva Conventions; and international humanitarian law;

4.  Order and declare that the Combatant Status Review Tribunal, as currently constituted and designed, is in violation of the Fifth Amendment to the United States Constitution; the International Covenant on Civil and Political Rights; the American Declaration on the Rights and Duties of Man; the regulations of the United States Military; the Geneva Conventions; and international humanitarian law;

5.  Order and declare that Petitioner is subject to the protections of the Geneva Conventions and international humanitarian law;

6.  Order and declare that the provision of the Executive Order of November 13, 2001 that bars Petitioner from seeking relief in this Court is an unlawful Suspension of the Writ, in violation of Article I of the United States Constitution;

7.  Order immediate, private and unmonitored access by counsel to Petitioner;

8.  Order immediate cessation of direct or indirect interrogation of Petitioner while the instant litigation is pending;

9.  Order immediate preservation of all evidence of torture or other abusive interrogation techniques or treatment by any individual acting for or on behalf of the United States military, the United States, or any agency thereof;

10. Order Petitioner's immediate release from unlawful custody if Respondents refuse to comply with the terms of relief sought in paragraphs 1 through 9, *supra*;

11. Order Respondents not to move Petitioner from Guantánamo Bay without providing thirty-days' notice to the Court and Petitioner's counsel of any proposed transfer;

12.   To the extent Respondents contest any material factual allegations in this Petition, schedule an evidentiary hearing at which Petitioner may adduce proof in support of his allegations; and

13.   Grant such other legal or equitable relief as the Court deems necessary and appropriate to protect Petitioner's rights under the United States Constitution and international law.

Dated: Washington, D.C.
       May 24, 2005

Respectfully submitted,

COVINGTON & BURLING

By:   *David H. Remes*

David H. Remes
D.C. Bar No. 370782
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Tel: (202) 662-5212
Fax: (202) 778-5212

Marc D. Falkoff
D.C. Bar No. 491149
1330 Avenue of the Americas
New York, NY 10019
Tel: (212) 841-1166
Fax: (646) 441-9166

*Lead Counsel for Petitioners*

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on this 24th day of May 2005.

_David H. Remes_

David H. Remes
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Tel: (202) 662-5212
Fax: (202) 662-6291

# Exhibit A

DATe:  April -2004

## Authorization

I am acting  as  next  frind  for  my  _brother_  whose  name  is  _Abdulsalam Ali Abdulrahman AL-hela_ And  who  is  being hled  at  Cuantanamo  Bay.  I hercby  authorize  Mohammed  Naji ALLawo ,  Najeeb  Bin  Mohammed  AL- nauimi  and  clive  Stafford Smith (of  gustice  in  Exile) ,  Michael   ratner  and  the  Canter  for Constitutional  Righs , and  any  person  assigned  by  these  Lawyers , to  ect  on  my  behalf  and  on  my  relative's  behalf , to  secure  any documents  and  information   concerning   my  relative  that   are necessary   for  his  defense , and  to  seek  whatever  redrass  they believe  to  be  in  his  best  interests , in  the  courts  of  the  united States , and in  any  other legal  forum  available.

_Abdulwahab Ali Abdulrahman Alhela_
Name:

Witnessed:  _Yahya  Fareia_

_Abdul wahab Ali Abdulrahman Alhela_
print Name:

# Exhibit B

# centerforconstitutionalrights

666 broadway new york, ny 10012
t 212 614 6464 f 212 614 6499 www.ccr-ny.org

April 25, 2005

Marc D. Falkoff
Covington & Burling
1330 Avenue of the Americas
New York, NY 10019

Re:  Abdul Salam Ali Abdul Rahman Al-Hela

Dear Marc:

    Pursuant to the authorizations we received from Abdul Wahab
Ali Abdul Rahman Al-Hela, Next Friend of petitioner Abdul Salam
Ali Abdul Rahman Al-Hela, CCR hereby authorizes Covington and
Burling to act as counsel in representing petitioner through his
Next Friend.

                          Very truly yours,

                          Tina Foster



## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing Petition for Writ of

Habeas Corpus and a Local Rule 405 Related-Case Notification to be served this 24th day of

May 2005, by registered mail on:

>The Honorable Alberto R. Gonzales
>Attorney General of the United States
>United States Department of Justice
>950 Pennsylvania Avenue, N.W.
>Washington, D.C. 20530;

>The Honorable Donald Rumsfeld,
>Secretary, United States
>Department of Defense
>1000 Defense Pentagon
>Washington, D.C. 20301-1000;

>Army Brigadier General Jay Hood
>Commander, Joint Task Force–GTMO
>JTF-GTMO
>APO AE 09360; and

>Army Col. Brice Gyurisko,
>Commander, Joint Detention Operations Group – JTF-GTMO
>JTF-GTMO
>APO AE 09360

I further certify that I have caused a copy of the foregoing Petition for Writ of

Habeas Corpus and a Local Rule 405 Related-Case Notification to be served this same day by

hand on:

>The Honorable Kenneth L. Wainstein
>Interim United States Attorney for the District of Columbia
>Judiciary Center
>555 4th Street, N.W.
>Washington, D.C. 20530

*David H. Remes*
_____
David H. Remes
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401