**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |
|---|---|
| **ABDULSALAM ALI** )
**ABDULRAHMAN AL-HELA**, *et al.* )
    **Petitioners,** )
 )      **Civil Action No. 05-01048 (RU)**
    *v.* )
 )
**GEORGE W. BUSH**, President of the )
**United States**, *et al.*, )
    **Respondents.** ) |

---

**PETITIONER'S CONDITIONAL CONSENT TO RESPONDENTS' MOTION
TO STAY PROCEEDINGS AND REPLY TO RESPONDENTS' OPPOSITION TO
MOTION FOR WRIT OF HABEAS CORPUS OR ORDER TO SHOW CAUSE**

**1.  Petitioner Does Not Oppose the Stay Motion in Its Entirety.**

If the matter were one of first impression, Petitioner would oppose Respondents' stay motion in its entirety.  But Judge Green stayed the Guantánamo detainee cases under her supervision; other Judges of this Court have stayed the cases assigned to them; and this Court has stayed *Al-Oshan v. Bush*, 05-CV-00520 (D.D.C. Mar. 31, 2005), *Qayed v. Bush*, 05-CV-00454 (D.D.C. Apr. 6, 2005), and *Tumani v. Bush*, 05-CV-00526 (D.D.C. Apr. 6, 2005).  In these circumstances, Petitioner does not ask the Court to deny Respondents' stay motion in its entirety.

Any stay, however, should not excuse Respondents from providing Petitioner's factual return to counsel promptly.  Judge Green ordered Respondents to provide factual returns despite the pendency of their motions to dismiss, which were the practical equivalent of Respondents' pending appeals.  In *Al-Oshan*, *Qayed*, and *Tumani*, this Court ordered Respondents to provide factual returns, even though the Court also stayed those cases.  At least six other Judges of this Court, although staying detainee cases, have ordered Respondents to provide factual returns. (*See* Mot. for Writ of Habeas Corpus or Order To Show Cause at 2 & n.1 (citing orders).)

Those returns have been critical. They have enabled counsel to interview their clients, their clients' families and others on a focused and informed basis, and otherwise to investigate and prepare their clients' cases – and to do so while memories are still fresh, witnesses and documents still available, and other evidence still within reach. *See Al-Mohammed v. Bush*, 05-CV-00247, slip op. at 2–3 (D.D.C. Apr. 30, 2005). As Judge Kennedy stated in *Al-Mohammed*, "petitioners' counsel must have access to [the returns] in order to develop a meaningful understanding of the basic factual allegations . . . and prepare for consultation with their clients." *Id.* at 2. For these reasons, the Court should not stay Respondents' obligation to provide the return in this case.

**2. Respondents' arguments against providing the return in this case fall short.**

Respondents complain that providing Petitioner's return would confront them with "an immense logistical burden." (Mot. to Stay at 11.) Any such "burden" to Respondents, however, does not outweigh Petitioner's interest in ensuring the investigation and preparation of his case before the trail – cool as it might be now – becomes completely cold, and in being able to proceed without delay if the Court of Appeals allows these cases to proceed.

Respondents' asserted "burden," moreover, is vastly overblown. The factual return is simply the record of proceedings before the Combatant Status Review Tribunal. *See id.* at 10 n.7. It already exists. Classification decisions regarding the information in the record of those proceedings were made *before* the proceedings began, and the entirety of the proceedings underwent legal review upon their completion. *See, e.g.*, Factual Return for Petitioner Mahmoad Abdah, Ex. A at 9, *Abdah v. Bush*, 04-CV-01254 (HHK) (D.D.C. Oct. 12, 2004). The only "burden" facing Respondents now is photocopying, sorting and stapling. Respondents were able to

produce the classified versions of approximately 60 returns in little more than a week when Judge Green ordered them to do so in the cases under her supervision.

Respondents claim that the returns would be useless to Petitioner's counsel because counsel could not share with Petitioner the classified information in the return. (Mot. to Stay at 11.) But not all the information in the return is classified. The allegations against Petitioner, which are set forth in the return, are not classified; until Petitioner's counsel have seen the return, they will not know what Petitioner is accused of having done, and cannot meaningfully interview Petitioner or begin to investigate or prepare his case.

The return also includes (1) an unclassified discussion of the classified information in the return; (2) an unclassified summary of the transcript of the CSRT hearing, including any statement or testimony by Petitioner or his "personal representative"; and (3) other unclassified information that counsel have found highly useful in their representation of other detainees. And, although counsel may not disclose classified information in the return to Petitioner, knowing that information enables counsel to focus their investigation and preparation of Petitioner's case and to seek from Petitioner and others facts pertinent to his "enemy combatant" designation.

Finally, Respondents speculate that providing the return in this case would increase the risk of inadvertent disclosure – or other compromise – of classified information. (*Id.* at 11–12.) This speculation lacks basis. Only counsel who have been granted security clearances and submitted themselves to a stringent Protective Order may see the classified information in the returns. "The Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004). Counsel are unaware of any report

that classified information provided by Respondents to cleared counsel in the detainee cases has been disclosed or otherwise compromised.

### 3. Counsel need to have Petitioner's return in hand not later than June 10, 2005.

On June 11, 2005, three lawyers from our firm representing Petitioner will be leaving for Yemen. Counsel plan to meet there with Petitioner's family and families of other detainee clients. On June 16, 2005, two other lawyers from our firm representing Petitioner will be leaving for Guantánamo. This visit will afford counsel a further opportunity to meet with their other detainee clients and their first opportunity to meet with Petitioner.

These visits were difficult to schedule. The timing of each was governed by considerations involving more than a dozen other detainees whom counsel also represent. The visits are, moreover, costly and time-consuming. Counsel pay those costs – including interpreter costs – from their own pockets. They also forego the fees that they could have earned serving paying clients during the visits, which in this instance will consume nearly *six weeks* of lawyer-time.

Respondents note that this Court and other Judges of the Court have issued more extended schedules in other recently filed cases. In most if not all of those cases, however, counsel are new, have not received their security clearances, and therefore would not be able to visit their clients for weeks, if not months. Moreover, in seeking those returns, new counsel were at a disadvantage because, unlike counsel here, they had not previously seen returns in these cases and therefore were unable to explain fully the immediate practical value of having the returns. *See supra* at 3. Whatever schedules may have been appropriate in those cases, Petitioner's counsel have their security clearances and need Petitioner's factual return for their two impending trips to be truly productive. That is sufficient reason to require Respondents to provide counsel with Petitioner's return not later than June 10, 2005.

**4.  Any stay should bar Respondents from removing Petitioner from Guantánamo without advance notice and explicitly permit Petitioner to seek emergency relief.**

This Court, and other Judges of the Court in at least 19 other cases, have prohibited Respondents from removing the petitioners in those cases from Guantánamo without providing counsel and the Court with 30-days' advance notice of the intended removal.  Some of those Judges have imposed this notice requirement by means of a preliminary injunction.[1]  Others, including this Court, have required advance notice as a condition of issuing a stay.[2]  This Court should similarly impose a 30-day advance-notice requirement as a condition of entering a stay in this case; and the stay, like the stays in the other cases, should explicitly permit Petitioner to seek emergency relief.  A copy of a proposed Order is attached.

WHEREFORE, this Court should issue the writ or an order to show cause forthwith, returnable by Respondents not later than June 10, 2005.  Any stay entered by the Court should impose a 30-day advance-notice requirement as a condition of entering a stay, and the stay should explicitly permit Petitioner to seek emergency relief.

---

[1]    *Al-Adahi, v. Bush*, 05-CV-00280 (GK) (D.D.C. Apr. 28, 2005); *Al Joudi v. Bush*, 05-CV-00301 (GK) (D.D.C. Apr. 4, 2005); *Al-Marri v. Bush*, 04-CV-2035 (GK) (D.D.C. Apr. 4, 2005); *Al-Mohammed v. Bush*, 05-CV-00247 (HHK) (D.D.C. Mar. 30, 2005); *Abdah v. Bush*, 04-CV-1254 (HHK) (D.D.C. Mar. 29, 2005).

[2]    *Kurnaz v. Bush*, 04-CV-1135 (ESH) (D.D.C. Apr. 12, 2005); *Ameziane v. Bush*, 05-CV-00392 (ESH) (D.D.C. Apr. 12, 2005); *Abdullah v. Bush*, 05-CV-00023 (RWR) (D.D.C. Apr. 8, 2005); *Al Rashaidan v. Bush*, 05-CV-00586 (RWR) (D.D.C. Apr. 8, 2005); *El Banna v. Bush*, 04-CV-1144 (RWR) (D.D.C. Apr. 8, 2005); *Tumani v. Bush*, 05-CV-00526 (RMU) (D.D.C. Apr. 6, 2005); *Qayed v. Bush*, 05-CV-00454 (RMU) (D.D.C. Apr. 6, 2005); *Al-Wazan v. Bush*, 05-CV-00329 (PLF) (D.D.C. Apr. 1, 2005); *Al-Shihry v Bush*, 05-CV-00490 (PLF) (D.D.C. Apr. 1, 2005); *Al-Oshan v. Bush*, 05-CV-00520 (RMU) (D.D.C. Mar. 31, 2005).

Dated:  June 3, 2005
        Washington, D.C.

Respectfully submitted,

COVINGTON & BURLING

By:     _____/s/_____
        David H. Remes
        D.C. Bar No. 370782
        1201 Pennsylvania Avenue, N.W.
        Washington, D.C.  20004-2401
        Tel:  (202) 662-5212
        Fax: (202) 778-5212

        Marc D. Falkoff
        D.C. Bar No. 491149
        1330 Avenue of the Americas
        New York, New York  10019
        Tel:  (212) 841-1166
        Fax: (646) 441-9166