

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
)
)
**ABDULSALAM ALI** )
**ABDULRAHMAN AL-HELA,** *et al.,* )
Petitioners, )
)
*v.* )
)
**GEORGE W. BUSH,** *et al.,* )
**Respondents.** )
)
)

Civil Action No. 05-CV-1048 (HHK)

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONER AND THE COURT WITH 30-DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONER FROM GUANTÁNAMO

Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and the All Writs Act, 28

U.S.C. § 1651, Petitioner Abdulsalam Ali Abdulrahman Al-Hela respectfully moves for an order

requiring Respondents to provide counsel for Mr. Al-Hela and the Court with 30-days' advance

notice of any intended transfer of Mr. Al-Hela from Guantánamo Bay Naval Base in Cuba. On

information and belief, Respondents have contemplated removing detainees – including poten-

tially Mr. Al-Hela – from Guantánamo to foreign territories for torture or indefinite detention

without due process of law. Mr. Al-Hela asks that his counsel be given advance notice of any

transfer to enable his counsel the opportunity to contest his removal from Guantánamo and to

preserve the jurisdiction of the Court in this matter.

The relief that Mr. Al-Hela seeks is identical to that previously ordered by this Court in

*Abdah v. Bush,* 04-CV-1254 (HHK) (March 29, 2005) (attached as Ex. A), and *Al-Mohammed v.*

*Bush,* 05-CV-0247 (March 30, 2005) (attached as Ex. B). For purposes of the relief requested in

this motion, Mr. Al-Hela is identically situated to the petitioners in *Abdah* and *Al-Mohammed*. Accordingly, he asks that the same relief be ordered in his case.

Counsel for Petitioner sought to avoid burdening the Court with this matter, instead proposing to Respondents a stipulation in which they would agree to the requested relief and Petitioner would not oppose a delimited stay of proceedings. Email from Marc Falkoff to Andrew Warden, May 25, 2005 (attached as Ex. C). Regrettably, Respondents summarily rejected counsel's proposal, Email from Terry Henry to Marc Falkoff, May 26, 2005 (attached as Ex. D), forcing Petitioner to burden the Court with a matter that should have been resolved consensually in view of the Court's prior rulings in *Abdah* and *Al-Mohammed*.

Because Respondents have refused to assure counsel that Mr. Al-Hela will not be removed from Guantánamo pending disposition of the instant motion for a preliminary injunction, Mr. Al-Hela also moves under Rule 65(b) for a temporary restraining order barring his removal from Guantánamo until this Court has ruled on his motion for a preliminary injunction.

Dated:    Washington, D.C.
          May 26, 2005

                                        Respectfully submitted,

                                        COVINGTON & BURLING

                                        *David H. Remes*

                                        David H. Remes
                                        D.C. Bar No. 370782
                                        1201 Pennsylvania Ave. NW
                                        Washington, DC 20004
                                        202-662-5212 (tel)
                                        202-778-5212 (fax)

                                        Marc D. Falkoff
                                        D.C. Bar. No. 491149
                                        1330 Avenue of the Americas
                                        New York, NY 10019
                                        212-841-1166 (tel)
                                        646-441-9166 (fax)

# CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing motion were sent by priority mail, postage pre-paid, this 26th day of May, 2005 to:

Joseph H. Hunt
Vincent M. Garvey
Terry M. Henry
Nicholas J. Patterson
Lisa A. Olson
James J. Schwartz
Preeya M. Noronha
Edward H. White
Robert J. Katerberg
Andrew I. Warden
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Room 7220
Washington, D.C. 20530
*Attorneys for Respondents-Appellants*

Jason M. Knott

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABDULSALAM ALI ABDULRAHMAN AL-HELA, *et al.*, Petitioners, )))))) | |
| *v.* )) | Civil Action No. 05-CV-1048 (HHK) |
| GEORGE W. BUSH, *et al.*, Respondents. )))))) | |

### [PROPOSED] ORDER

Having considered Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction Requiring Respondents to Provide Counsel for Petitioner and the Court with 30-Days' Advance Notice of Any Intended Removal of Petitioner from Guantánamo, it is this 26th day of May, 2005, hereby

**ORDERED,** that Petitioner's motion for a preliminary injunction is **GRANTED**; and it is further

**ORDERED,** that Respondents shall provide Petitioners' counsel and the court with 30 days' notice prior to transporting or removing any of Petitioners from Guantánamo Bay Naval Base; and it is further

**ORDERED,** that this order shall remain in effect until the final resolution of Petitioners' habeas claims unless otherwise modified or dissolved.


Henry H. Kennedy, Jr.
United States District Judge

# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAHMOAD ABDAH, et al.,

        Petitioners,

        v.

GEORGE W. BUSH, et al.,

        Respondents.

Civil Action 04-1254 (HHK)

### MEMORANDUM OPINION

Petitioners are aliens who are being held by the United States military at Guantánamo Bay Naval Base in Cuba and who have petitioned this court for a writ of habeas corpus. While the merits of their individual claims have not yet been adjudicated, this court (Green, J.) has determined that some of the causes of action set forth in their habeas petition survive Respondents' motion to dismiss. This ruling is currently on appeal. Presently before the court is Petitioners' motion for a preliminary injunction. Asserting that Respondents have contemplated or are contemplating transferring them to the custody of foreign nations to be further detained and possibly tortured, Petitioners seek an order from this court that would require Respondents to provide their counsel and this court with 30 days' advance notice of any Petitioner's removal from Guantánamo. Upon consideration of the briefing of the parties, the submissions that accompany the briefing, and the arguments of counsel at a hearing, the court concludes that Petitioners' motion should be granted.

# I. BACKGROUND

Petitioners are thirteen[1] Yemeni nationals who each allegedly traveled to Pakistan for

reasons "unrelated to any activities of al Qaeda or the Taliban," Pet. ¶ 19,[2] such as pursuing

religious studies, *id.* ¶¶ 26, 40, 43, 45, 47; obtaining medical care, *id.* ¶ 33; and seeking better

employment, *id.* ¶ 36. All were "arrested by Pakistani police as part of a dragnet seizure of

Yemeni citizens." *Id.* ¶ 19. Details of their capture and subsequent movements are hazy, but

Petitioners allege that they were seized in 2001 or 2002, *id.* ¶ 20, "far from the battlefield." *Id.* ¶

61. All were then transferred to United States military custody and transported to the United

States Naval Base at Guantánamo Bay, Cuba ("Guantánamo"), where they have since been held,

"virtually *incommunicado,*" *id.* ¶ 63, as "enemy combatants." All Petitioners deny that they are

enemy combatants or that they have otherwise been "part of or supporting forces hostile to the

United States." *Id.* ¶ 15.

On June 28, 2004, the Supreme Court determined that "the federal courts have

jurisdiction to determine the legality of the Executive's potentially indefinite detention of [the

detainees at Guantánamo Bay] who claim to be wholly innocent of wrongdoing." *Rasul v. Bush,*

---

[1] The court notes some inconsistency in the parties' briefing regarding the number of
Petitioners included in this action. The petition for writ of habeas corpus lists *fourteen*
individuals: (1) Mahmoad Abdah; (2) Majid Mahmoud Ahmed; (3) Abdulmalik Abdulwahab Al-
Rahabi; (4) Makhtar Yahia Naji Al-Wrafie; (5) Aref Abd Il Rheem; (6) Yasein Khasem
Mohammad Esmail; (7) Adnan Farhan Abdul Latif; (8) Jamal Mar'i; (9) Othman Abdulraheem
Mohammad; (10) Adil Saeed El Haj Obaid; (11) Mohamed Mohamed Hassan Odaini; (12)
Sadeq Mohammed Said; (13) Farouk Ali Ahmed Saif; and (14) Salman Yahaldi Hsan
Mohammed Saud. Pet. ¶¶ 22-51 and caption.
　　Petitioners' motion for a preliminary injunction identifies *thirteen* Petitioners, Pet'rs'
Mot. at 2, while Respondents mention *twelve* detainees, stating they have no records
corresponding to Aref Abd Il Rheem. Resp'ts' Opp'n at 2, n.1.

[2] "Pet." refers to Petitioners' petition for writ of habeas corpus filed July 27, 2004.

__ U.S. __, 124 S. Ct. 2686, 2699 (2004). Shortly thereafter, the Department of Defense issued

an order creating the Combatant Status Review Tribunal ("CSRT") to evaluate the status of each

detainee at Guantánamo. *In re Gunatanamo Detainee Cases*, 355 F. Supp. 2d 443, 450 (D.D.C.

2005), *appeal docketed*, No. 05-8003 (D.C. Cir. Mar. 21, 2005). On July 27, 2004, Petitioners

filed a petition for writ of habeas corpus, seeking to obtain "a judicial determination of whether

there is a factual basis for Respondent's determination that they are 'enemy combatants,'" Pet. ¶

14, and asserting that the government has "advanced no justification" for their "arrest,

transportation and continued incarceration." *Id.* ¶ 16. Their petition was coordinated with ten

other habeas cases filed by other Guantánamo detainees to allow Judge Joyce Hens Green, the

designated judge, to resolve common issues of law and fact.

On January 31, 2005, Judge Green issued a memorandum opinion and order granting in

part and denying in part Respondents' motion to dismiss, finding that the detainees "have the

fundamental right to due process of law under the Fifth Amendment," *In re Gunatanamo

Detainee Cases*, 355 F. Supp. 2d at 463, and that the CSRT proceedings failed to protect those

due process rights. *Id.* at 468.

Subsequently, Judge Green issued an order certifying her opinion for interlocutory appeal

and staying the proceedings in the eleven cases pending resolution of Respondents' appeal.

Petitioners now contend that "Respondents have contemplated or are contemplating removal of

some or all Petitioners from Guantánamo to foreign territories for torture or indefinite

imprisonment without due process of law." Pet'rs' Mot. for Prelim. Inj. ("Pet'rs' Mot.") at 1.

Fearing that any such transfer would "also circumvent[] Petitioners' right to adjudicate the

legality of their detention," *id.* at 6, Petitioners seek a preliminary injunction requiring

Respondents to provide Petitioners' counsel with 30 days' advance notice of "any intended

removal of Petitioners from Guantanamo Bay Naval Base," *id.* at 1, to enable counsel to contest

the removal if they deem it advisable to do so.

## II. ANALYSIS

### A.    Stay of February 3, 2005

Respondents first argue that the stay order Judge Green issued in the eleven coordinated

cases prevents this court from considering the merits of the present motion.  This argument is

unavailing.

On February 3, 2005, Judge Green issued an order in the eleven habeas cases that "stayed

[the cases] for all purposes pending resolution of all appeals in this matter." *In re Guantanamo*

*Detainee Cases,* No. 04-1254 (D.D.C. Feb. 3, 2005) (order).  Courts have consistently

recognized that a stay may be necessary preserve the status quo among the parties pending

appeal. *See, e.g., Warm Springs Dam Task Force v. Gribble,* 417 U.S. 1301, 1310 (1974);

*United Mun. Distrib. Group v. FERC,* 732 F.2d 202, 205 (D.C. Cir. 1984); *NLRB v. Sav-on*

*Drugs, Inc.,* 704 F.2d 1147, 1149 (9th Cir. 1983); *Metzler v. United States,* 832 F. Supp. 204,

208 (E.D. Mich. 1993).  Here, Petitioners are not asking the court to bypass the stay and resume

adjudication of their underlying claims.  Rather, they seek to prevent Respondents from

unilaterally and silently taking actions that may render their claims moot; thus the injunctive

relief Petitioners seek would ensure the very same result that the stay itself was entered to

secure. *See Dist. 50, United Mine Workers of Am. v. Int'l Union, United Mine Workers of Am.,*

412 F.2d 165, 169 (D.C. Cir. 1969).  The stay order simply cannot be construed to prevent

emergency relief consistent with maintenance of the status quo. *See Summit Med. Assocs., P.C.*

4

*v. James*, 998 F. Supp. 1339, 1351 (M.D. Ala. 1998); *Universal Marine Ins., Ltd. v. Beacon Ins. Co.*, 577 F. Supp. 829, 832 (W.D.N.C. 1984). The court therefore proceeds to consider the merits of Petitioners' request.

**B.    Legal Standard**

A preliminary injunction is an "extraordinary remedy" that should only issue "when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A court considering a preliminary injunction request must examine four factors, namely whether: (1) Petitioners will be "irreparably harmed if an injunction is not granted"; (2) there is a "substantial likelihood" Petitioners will succeed on the merits; (3) an injunction will "substantially injure" Respondents; and (4) the public interest will be furthered by the injunction. *Serono Labs., Inc., v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). These four factors "interrelate on a sliding scale" and must be considered in relation to one another, for "'if the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.'" *Id.* at 1318 (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).

**C.    Merits of the Preliminary Injunction Motion**

1. Irreparable Injury

The court gives special scrutiny to Petitioners' claims of injury, because "the basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin.*, 58 F.3d at 747 (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). To obtain preliminary injunctive

relief, Petitioners must show that the injury threatening them is more than "remote and speculative." *Milk Indus. Found. v. Glickman*, 949 F. Supp. 882, 897 (D.D.C. 1996). Petitioners unquestionably make such a showing.

Petitioners allege two irreparable injuries. With respect to the first, they claim that the Department of Defense is actively planning the transfer of detainees from Guantánamo to countries "for torture or indefinite imprisonment without due process of law," Pet'rs' Mot. at 1, and note that the United States has "repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques." *Id.* at 3. Respondents dispute these assertions, dismissing them as "sensationalistic allegations" based upon "hollow speculation" and "largely anonymous sources and innuendo" cited in newspaper and magazine articles, Resp'ts' Opp'n at 19, and statements from a single detainee. Respondents then describe the policy and procedures the United States employs regarding the transfer and repatriation of Guantánamo detainees, including the transfer of detainees to the control of other governments for investigation and possible prosecution. Respondents state that "a key concern is whether the foreign government will treat the detainee humanely and in a manner consistent with its international obligations," Resp'ts' Opp'n at 4, and that "it is the policy of the United States not to repatriate or transfer a detainee to a country where the United States believes it is more likely than not that the individual will be tortured." *Id.* Respondents also provide declarations from high-level Department of State and Department of Defense officials outlining the consultations and deliberations the agencies undertake prior to transferring a detainee, and indicating that among 211 detainees the military has transferred out of Guantánamo to date, 65 were provided to foreign governments for ongoing detention. *Id.*, Prosper Decl. ¶ 2, Waxman Decl. ¶ 4.

These declarations concerning general policy and practice, however, do not entirely refute Petitioners' claims or render them frivolous. The court has reviewed Petitioners' exhibits, and notes that in addition to citing anonymous sources, the submitted articles quote by name former Guantánamo detainees, former high-level officials from the United Kingdom and Pakistan, and current and former employees of the United States government who were themselves involved in transferring detainees. The court, however, need not determine whether Petitioners' fear of torture constitutes the requisite "irreparable injury" because their second claim of injury clearly satisfies the preliminary injunction standard.

Petitioners contend that if the United States military transfers Petitioners from Guantánamo to overseas custody, it would effectively extinguish those detainees' habeas claims by fiat. Such transfers would eliminate any opportunity for Petitioners to ever obtain a fair adjudication of their "fundamental right to test the legitimacy of [their] executive detention." *Lee v. Reno*, 15 F. Supp. 2d 26, 32 (D.D.C. 1998). The parties agree that upon transfer, the court will no longer retain jurisdiction to provide any relief Petitioners seek. Hr'g Tr. at 19:7-10; Resp'ts' Opp'n at 6 ("once transferred, a detainee is no longer subject to the control of the United States"), Waxman Decl. ¶ 5. While Respondents contest Judge Green's determination that Petitioners have legally cognizable due process claims properly before the court, pending their appeal they may not act to deprive this court of its jurisdiction over the very "corpus" of this case; indeed, the "federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the protection of their rights in those tribunals." *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (quoting *Alabama Great S. R. Co. v. Thompson*, 200 U.S. 206, 218 (1906)).

7

2. Likelihood of Success

Petitioners argue that they have properly invoked this court's jurisdiction and have stated actionable claims under the Due Process Clause of the Fifth Amendment and the Geneva Convention, thereby demonstrating a likelihood of success. Respondents urge instead that Petitioners fail to make the required showing "that they are likely to succeed in establishing a judicially enforceable entitlement to veto the same repatriation that they previously told the Court Respondents were required to conduct." [3] Resp'ts' Opp'n at 11 (emphasis omitted). Although the court would use somewhat different language to characterize the relevant standard, Respondents are correct that *if* there are no circumstances under which Petitioners could obtain a court order preventing a contemplated transfer, a preliminary injunction should not be granted. Respondents are wrong, however, in arguing that there are in fact no such circumstances present, and that consequently there is no legal basis for judicial involvement in transfer or repatriation decisions regarding Petitioners.

To the contrary, transfer of Petitioners without notice and leave of court is forbidden by FED. R. APP. P. 23(a), which requires that "pending review of a decision in a habeas corpus proceeding[4] commenced before a court . . . the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule." The Rule

---

[3] This last contention is perplexing, because it seems beyond question that advocating for release into freedom is not equivalent to advocating for transfer from ongoing detention in one locale to ongoing detention in another.

[4] Jurisdiction over a petition for a writ of habeas corpus is determined when the petition is filed. *Barden v. Keohane,* 921 F.2d 476, 477 n.1 (3d Cir. 1990) (citing accordance with *Ross v. Mebane,* 536 F.2d 1199 (7th Cir. 1976) (per curiam); *Harris v. Ciccone,* 417 F.2d 479 (8th Cir. 1969), *cert. denied,* 397 U.S. 1078 (1970)).

"was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir. 1982) (citing *Jago v. United States Dist. Court*, 570 F.2d 618, 626 (6th Cir. 1978), and *Goodman v. Keohane*, 663 F.2d 1044, 1047 (11th Cir. 1981)). Respondents' contention that Rule 23(a) is not typically applied in situations involving the transfer of prisoners to the custody of foreign nations, Resp'ts' Br. in Resp. to Pet'rs' Notice of Supp. Auth. at 3, while correct, is of no moment. Its application here is consistent with both the text of the rule and its underlying purpose. Indeed, Rule 23(a) acquires an even greater importance in the context of Petitioners' case. When a prisoner with a pending habeas action is simply transferred from one state to another in violation of Rule 23(a), the transfer "does not divest [the court of its] jurisdiction over the action." *Reimnitz v. State's Attorney of Cook County*, 761 F.2d 405, 409 (7th Cir. 1985). Here, though, Petitioners' transfer to another nation would assuredly deprive the court of its jurisdiction. Petitioners thus demonstrate that they have a clear likelihood of success in blocking a transfer made absent notice to, and approval from, the court.

Respondents further argue against the application of Rule 23(a) by referring to a footnote in *Rasul*, which remarked that after the Supreme Court granted certiorari, two petitioners in that case, Shafiq Rasul and Asif Iqbal, were "released from custody." *Rasul*, 124 S. Ct. 2686, 2691 n.1. Respondents argue that this reference demonstrates that the Supreme Court "did not give any hint of perceiving any violation" of the Supreme Court's equivalent to Rule 23(a). Resp'ts' Br. in Resp. to Pet'rs' Notice of Supp. Auth. at 4; *see also* Hr'g Tr. at 7:20-21. The court declines Respondents' invitation to make such an inference, both because there is no indication in *Rasul*

9

whether the two named petitioners were transferred into foreign custody or released outright, and because neither party presented the issue to the Supreme Court.

### 3. Harm to Respondents

Respondents assert that granting Petitioners' motion would "illegitimately encroach on the foreign relations and national security prerogatives of the Executive Branch." Resp'ts' Opp'n at 1. They also argue that granting Petitioners' injunction request would harm the government in "myriad" other ways, by "undermining the United States Government's ability to investigative and resolve allegations of mistreatment or torture"; "undermin[ing]the United States' ability to reduce the numbers of individuals under U.S. control"; impairing the United States' coordination with other governments' efforts in the war on terrorism; and "encumber[ing] . . . an already elaborate process leading up to transfers or repatriations." Resp'ts' Opp'n at 22. At the preliminary injunction hearing held on March 22, 2005, Respondents' counsel amplified these contentions, noting that the advance notice requirement would "undermine[] the executive's ability to speak with one voice." Hr'g Tr. at 8:10-11. Beyond these vague premonitions, however, the court does not have any indication that notifying Petitioners' counsel 30 days ahead of planned transfers of their clients will intrude upon executive authority. The preliminary injunction Petitioners seek will not require, or even enable, the court to take the two *specific* actions which Respondents' declarants warn against: forcing State Department officials to "unilaterally . . . disclose outside appropriate Executive branch channels its communications with a foreign government relating to particular mistreatment or torture concerns," Resp'ts' Opp'n, Prosper Decl. ¶ 10, and publicly disclosing the facts gathered and analyses prepared by various State Department offices, or bringing these findings "to the attention of officials and others in

10

foreign States . . ." *Id.* ¶ 11.

In evaluating the alleged injury Respondents would suffer if the preliminary injunction is granted, the court balances the respective hardships imposed upon the parties. *See O'Donnell Constr. Co. v. District of Columbia*, 963 F.2d 420, 429 (D.C. Cir. 1992); *George Washington Univ. v. District of Columbia*, 148 F. Supp. 2d 15, 18-19 (D.D.C. 2001). While the injunction Petitioners seek might restrict or delay Respondents with respect to one aspect of managing Petitioners' detention, such a consequence does not outweigh the imminent threat facing Petitioners with respect to the *entirety* of their claims before the court.[5]

4. Public Interest

Finally, the court looks to whether granting the preliminary injunction request implicates the public interest, and if so, whether it confers benefit or produces harm. Respondents simply conflate the public interest with their own position, noting that "the public interest and harm-to-non-movant factors converge." Resp'ts' Opp'n at 21. It is indisputable that the public interest favors vigorously pursuing terrorists and holding them to account for their actions. It is

---

[5] Respondents' assertion that they are merely "relinquishing" custody of detainees whom the government is simply "no longer interested in detaining," Hr'g Tr. at 9:20-21, is disingenuous. According to Petitioners' allegations, unanswered by the United States, they have been held at Guantánamo for periods of several years, *see, e.g.*, Pet'rs' Mot., Exs. K, M, O, S. The government's invocation of sudden exigency requiring their transfer now cannot trump Petitioners' established due process rights to pursue their habeas action in federal court. *See Rasul*, 124 S. Ct. at 2698-99; *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d at 464 ("Of course, it would be far easier for the government to prosecute the war on terrorism if it could imprison all suspected 'enemy combatants' at Guantanamo Bay without having to acknowledge and respect any constitutional rights of detainees. That, however, is not the relevant legal test . . . constitutional limitations often, if not always, burden the abilities of government officials to serve their constituencies.").

11

misleading, however, to frame the relevant interest here as the government's ability "to detain enemy combatants to prevent them from returning to the fight and continuing to wage war against the United States." Resp'ts' Opp'n at 21-22. Petitioners' current designation as enemy combatants is not a foregone conclusion; challenges to the accuracy and legitimacy of the government's determination that Petitioners have engaged in hostilities against the United States, or aided those who have, are the very core of Petitioners' underlying habeas claims. Respondents' assertion to the contrary, that "Petitioners' enemy combatant status was recently confirmed in Combatant Status Review Tribunals," Resp'ts' Opp'n at 2, ignores Judge Green's ruling that the CSRTs as so far implemented are constitutionally deficient. Instead, this factor tilts in Petitioners' favor, because the public has a strong interest in ensuring that its laws do not subject individuals to indefinite detention without due process; "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

**D.    All Writs Act**

Petitioners also ask the court to exercise its authority under the All Writs Act, which provides in relevant part that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction . . . ," *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996), and a court may grant a writ under the Act whenever it determines such action necessary "to achieve the ends of justice entrusted to it." *Adams v. United States*, 317 U.S. 269, 273 (1942). Were the court to find adequate "alternative remedies" unavailable, *Clinton v.*

*Goldsmith*, 526 U.S. 529, 537 (1999), or "the traditional requirements of an injunction" inapplicable, *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1101 n.13 (11th Cir. 2004), it could employ the Act to order the relief Petitioners seek. Because Petitioners have made a clear showing that a preliminary injunction is warranted under the familiar four-part test, though, the court need not take recourse to the All Writs Act.

### III. CONCLUSION

For the foregoing reasons, the court finds that Petitioners satisfy the requirements for a preliminary injunction, and therefore grants their present motion. An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge

Dated: March 29, 2005

13

# Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAHMOOD AL-MOHAMMED, et al.,**<br><br>**Petitioners,**<br><br>**v.**<br><br>**GEORGE W. BUSH, et al.,**<br><br>**Respondents.** | **Civil Action 05-00247 (HHK)** |

## ORDER

Before the court is Petitioners' motion for a preliminary injunction [#10]. Upon consideration of the motion and the opposition thereto, and for the reasons stated in this court's opinion in *Abdah v. Bush*, No. 04-1254 (March 29, 2005) (order granting preliminary injunction), it is this 30th day of March, 2005, hereby

**ORDERED,** that Petitioners' motion for a preliminary injunction is **GRANTED**; and it is further

**ORDERED,** that Respondents shall provide Petitioners' counsel and the court with 30 days' notice prior to transporting or removing Petitioner Mahmood Al-Mohammed from Guantánamo Bay Naval Base; and it is further

**ORDERED,** that this order shall remain in effect until the final resolution of Petitioners' habeas claim unless otherwise modified or dissolved.

Henry H. Kennedy, Jr.
United States District Judge

# Exhibit C

**Falkoff, Marc**

| | |
|---|---|
| **From:** | Falkoff, Marc |
| **Sent:** | Wednesday, May 25, 2005 3:53 PM |
| **To:** | 'Andrew.Warden@usdoj.gov' |
| **Cc:** | Remes, David |
| **Subject:** | Al-Hela |

Andrew,

As you know, this afternoon we filed a habeas petition for another Yemeni held at Guantanamo, Abdulsalam Ali Abdulrahman Al-Hela. We met with Mr. Al-Hela's family in Sana'a last week. We now seek to reach an agreement with you on how to proceed so as to minimize early skirmishes. We propose to embody the agreement in a joint stipulation to be filed with Judge Kennedy, who would undoubtedly appreciate this approach.

First, we ask that you agree to provide us with the factual return for Mr. Al-Hela. Judge Kennedy ordered the government to provide a factual return in *Al-Mohammed v. Bush*, 05-CV-0247 (HHK) (Apr. 30, 2005), even while staying the proceedings in that case; we would expect him to do the same in Mr. Al-Hela's case. We would have no objection to representing in the stipulation that your agreement to provide the return reflects the fact that the Court ordered the government to file a return in *Al-Mohammed*, and that you would oppose such notice if the matter were one of first impression in this Court.

Second, we ask that you provide us with the factual return not later than June 1, 2005. Because Mr. Al-Hela has been through his CSRT hearing and has been deemed an "enemy combatant," we imagine that this should be feasible for the government. We require the return before our next visit to GTMO, which we are seeking to make in mid-June.

Finally, we ask that you agree to provide us with the same 30-days' notice that Judge Kennedy ordered in *Abdah* and *Al-Mohammed*. Again, given that Judge Kennedy ordered such notice in those cases, we would expect him to order such notice here; and, again, we would have no objection to representing in the stipulation that your agreement to provide such notice reflects the fact that the Court entered such notice in those cases, and that you would oppose such notice if the matter were one of first impression in this Court.

For our part, we are prepared not to oppose entry of the protective order entered in *Abdah*, modified to relieve the government of the need to seek the Court's approval before designating information as "protected information."

We are also prepared not to oppose a stay of the case pending resolution of the Green and Leon appeals now pending in the CADC, on the understanding that the stay would not preclude our seeking emergency relief for Mr. Al-Hela.

We would greatly appreciate your response to this proposal not later than noon tomorrow. Please do not hestitate to get in touch with me beforehand to discuss these items.

Best,

Marc

Marc D. Falkoff
Covington & Burling
1330 Avenue of the Americas
New York, NY 10019
Tel:   (212) 841-1166
Cell:  (347) 564-5043
Fax:  (646) 441-9166

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please notify the sender by return email and immediately delete the message from your system. Thank you for your cooperation.*

# Exhibit D

**Falkoff, Marc**

| | |
|---|---|
| **From:** | Terry.Henry@usdoj.gov |
| **Sent:** | Thursday, May 26, 2005 2:49 PM |
| **To:** | Falkoff, Marc |
| **Cc:** | Andrew.Warden@usdoj.gov; Remes, David |
| **Subject:** | Al-Hela |

Marc,

I am responding to your e-mail to Andrew Warden from yesterday regarding a proposed stipulation in the newly-filed Al-Hela case. We cannot agree to your proposed stipulation. In any event, it would not be feasible to provide a factual return in this case by June 1, i.e., in 3 business days over a holiday weekend. And just so we are all on the same page, you do not have a GTMO visit scheduled for mid-June. You have requested such a visit. I believe Andrew has already informed you that due to the number of counsel visits already scheduled and being requested for June, your requested dates may not work out. We are waiting to hear back from GTMO regarding the feasibility of the requested dates.

Terry

Terry Henry
Senior Trial Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
Ph. 202.514.4107