IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL AL-RAHIM GHULAM RABBANI,<br><br>Petitioner<br><br>v.<br><br>GEORGE WALKER BUSH, *et al.*,<br><br>Respondents. | Civil Action No. 05-1048 (HHK) |

## **DECLARATION OF TERESA A. McPALMER**

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information and belief, the following is true, accurate and correct:

1.   I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.   I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Abdul al-Rahim Ghulam Rabbani that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or have been redacted. An OARDEC staff member redacted information that would personally identify U.S. Government personnel in order to protect the personal security of those individuals. This staff member also redacted internee serial numbers because certain combinations of internee serial numbers with other information relate to sensitive internal and intelligence

operations that is not suitable for public release.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 1 June 2005

                                          Teresa A. McPalmer
                                          CDR, JAGC, USN



# Department of Defense
### Director, Combatant Status Review Tribunals

OARDEC/Ser: 743

23 JAN 2005

FOR OFFICIAL USE ONLY

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN #**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN # meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir



# Department of Defense
Director, Combatant Status Review Tribunals

4 Nov 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #19

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

MEMBERS:

███████████████, Colonel, U.S. Army; President

███████████████, Commander, U.S. Navy; Member

███████████████, Major, JAGC, U.S. Army Reserve; Member
(JAG)

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

13 December 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander

SUBJECT: CSRT Record of Proceedings ICO ISN ▇

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ▇

CHARLES E. JAMISON
CAPT, USN

UNCLASSIFIED

18 Jan 05

MEMORANDUM

From: Assistant Legal Advisor
To:   Director, Combatant Status Review Tribunal
Via:  Legal Advisor

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # ■

Ref:  (a) Deputy Secretary of Defense Order of 7 July 2004
      (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal # 19 of 4 November 2004
      (2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I find that:

   a. The detainee was properly notified of and actively participated in the Tribunal process. The detainee provided a sworn oral statement at the Tribunal hearing.

   b. The Tribunal was properly convened and constituted by enclosure (1).

   c. The Tribunal substantially complied with all provisions of references (a) and (b).

   d. The detainee did not request that any witnesses or evidence be produced.

e. The Tribunal's decision that detainee # ■ is properly classified as an enemy combatant was unanimous.

2. The proceedings and decision of the Tribunal as reflected in enclosure (2) are legally sufficient and no corrective action is required.

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

BREE A. ERMENTROUT
CDR, JAGC, USNR

UNCLASSIFIED

## (U) <u>Combatant Status Review Tribunal Decision Report Cover Sheet</u>

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: __#19__

(U) ISN#: _____

Ref: (a) Convening Order for Tribunal #19 of 4 November 2004 (U)
     (b) CSRT Implementation Directive of 29 July 2004 (U)
     (c) DEPSECDEF Memo of 7 July 2004 (U)

Encl: (1) Unclassified Summary of Basis for Tribunal Decision (U)
     (2) Classified Summary of Basis for Tribunal Decision (S//NF)
     (3) Summary of Detainee/Witness Testimony (U/███)
     (4) Copies of Documentary Evidence Presented (S//NF)
     (5) Personal Representative's Record Review (U)

(U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

(U) The Tribunal has determined that Detainee #____ is designated as an enemy combatant as defined in reference (c).

(U) In particular, the Tribunal finds that this detainee is a member of, affiliated with, al Qaida, as more fully discussed in the enclosures.

(U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



Colonel, U.S. Army
Tribunal President

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

(Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#19_____
ISN #: _____▓▓▓_____

## 1. Introduction

As the Combatant Status Review Tribunal Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and is a member of, or affiliated with, al Qaida. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal. Any classified evidence considered by the Tribunal is discussed in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is a member of al Qaida: The Detainee assisted members of the Egyptian Islamic Jihad through facilitation of movement out of Yemen and by obtaining them passports. The Egyptian Islamic Jihad is a terrorist organization associated with al Qaida. The Detainee assisted members of the Al-Gama'a al-islamiyya. The Al-Gama'a al-islamiyya is a designated foreign terrorist organization associated with al Qaida. The Detainee provided false passports to associates of Usama Bin Laden. The Detainee is associated with a convicted terrorist and visited him in prison. The Detainee has had meetings with representatives of al Haramayn. The Detainee arranged the release of imprisoned al Qaida members. The Detainee supported military operations against the United States and its coalition partners. The Detainee's brother was extremely close to those who conducted the terrorist attack on the U.S.S. Cole. The Detainee possessed detailed knowledge of a planned terrorist attack on a U.S. embassy. The Detainee possessed detailed knowledge of a terrorist attack against a western oil company.
The Detainee chose to participate in the Tribunal process. He called no witnesses and made an oral, sworn statement. The detainee, in his oral statement, denied being a member of al Qaida.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a, R-1 through R-14

    b. Testimony of the following persons: none.

    c. Sworn statement of the detainee

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The Detainee requested no witnesses and requested no additional evidence be produced; therefore, no rulings on these matters were required.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

    a. The recorder offered Exhibits R-1 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

    b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's sworn testimony. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee stated that he was not a member of al Qaida. He stated that he did not help anyone with false or real passports and didn't know anyone who was in prison. The Detainee denied any knowledge of al Qaida members. He further stated that his brother went to Bosnia with family permission. If he knew these people, the Detainee didn't know about it. His brother was imprisoned for six years (1997-2002) and was still in jail when the Detainee was captured. The Detainee stated that if he did know about any attacks he would tell the government. He is a simple businessman. Eighty percent of this trade was as an exclusive dealer for international companies. He helped them and received a commission from the companies. These companies need stability and they wouldn't have dealt with him if they thought he was into terrorism. Terrorism was against his trade. At this point, the Detainee accused his Personal Representative of being against him, declined to have his Personal Representative enter a written statement for him as the Detainee had previously asked the Personal Representative to do, and said that he would make no further comments since his words could be used against him.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

**6. Consultations with the CSRT Legal Advisor**

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.


    c. Sworn statement of the detainee

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The Detainee requested no witnesses and requested no additional evidence be produced; therefore, no rulings on these matters were required.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

    a. The recorder offered Exhibits R-1 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

    b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's sworn testimony. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee stated that he was not a member of al Qaida. He stated that he did not help anyone with false or real passports and didn't know anyone who was in prison. The Detainee denied any knowledge of al Qaida members. He further stated that his brother went to Bosnia with family permission. If he knew these people, the Detainee didn't know about it. His brother was imprisoned for six years (1997-2002) and was still in jail when the Detainee was captured. The Detainee stated that if he did know about any attacks he would tell the government. He is a simple businessman. Eighty percent of this trade was as an exclusive dealer for international companies. He helped them and received a commission from the companies. These companies need stability and they wouldn't have dealt with him if they thought he was into terrorism. Terrorism was against his trade. At this point, the Detainee accused his Personal Representative of being against him, declined to have his Personal Representative enter a written statement for him as the Detainee had previously asked the Personal Representative to do, and said that he would make no further comments since his words could be used against him.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

**6. Consultations with the CSRT Legal Advisor**

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

ISN #████

## 7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

    a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed appropriate.

    b. The Detainee understood the Tribunal proceedings. He requested to see the Classified information and told the Tribunal that the proceedings were unfair. He asked no questions regarding the Tribunal proceedings and actively participated in the hearing.

    c. The Detainee is properly classified as an enemy combatant and is a member of, or affiliated with al Qaida.

## 8. Dissenting Tribunal Member's report

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

[signature redacted]
Colonel, U.S. Army
Tribunal President

UNCLASSIFIED/

**Summarized Detainee Sworn Statement**

*The Tribunal President read the Hearing Instructions to the Detainee and asked if he understood the process.*

Detainee: Should I speak?

Tribunal President: As far as if you understand the process that we just described to you.

Detainee: It's not fair for me if you mask some of the secret information. How can I defend myself?

Tribunal President: The Tribunal is an impartial panel that looks at two things. The things we take into account are the information that the recorder provides us; the second thing that we look at is the oral statement that you will provide today, we hope. We have to weigh both things.

Detainee: I don't know what I should say. It is unfair that the government is going to be talking about me and I don't have an attorney, a civil attorney, and that attorney can come up with evidence that proves my innocence. As all people who commit crimes, they have an attorney defending them. If that's the only thing we have to do, what else can I say?

Tribunal President: I just want to remind you that this is an administrative process only. No punishment will be derived from the things that we do here today.

Detainee: You are right, but the thing that is the worse punishment is when you have determined that I am guilty when I am not. I feel that anybody that comes before any Tribunal is going to be classified as an Enemy Combatant. I'm not putting you down because I don't know you and you don't know me. I respect the Tribunal but the way it's formed is unjust.

Tribunal President: We will note your concerns for the record. I would like to tell you though that we do look at each case on its own merits. So basically, at least what information I have given you; do you understand the process up to this point?

Detainee: Yes.

Tribunal President: And I will again note your concerns.

Translator: Excuse me, may I ask him if he speaks English? If he wants to say something in English, because I just heard him say something in English.

Tribunal President: He did respond in English. Yes, you certainly can ask him.

Translator: He just said that he only knows a few words.

ISN#
Enclosure (3)
Page 1 of 8

UNCLASSIFIED/

Tribunal President: I was going to say that you don't have to use the translator if you don't want to. Feel free to engage us directly.

Detainee: I really wish I knew how to speak the English, this way I would have explained it much better and I will know them and they will know me.

*The Personal Representative presented the Detainee Election Form (Exhibit D-A) to the Tribunal.*

Tribunal President: Recorder, please provide the Tribunal with the unclassified evidence.

Detainee: What is this D-A?

Tribunal President: It's an exhibit that your Personal Representative prepares based on your initial interview that you had with him. We'll talk about it here in just a minute.

*The Recorder presented the Unclassified Summary of Evidence (Exhibit R-1) to the Tribunal.*

*The Recorder presented Exhibits R-2 and R-3 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

*The Tribunal President opened the Tribunal to the Detainee to make his statement noting that he, per the Detainee Election Form, would read a translated copy of the summary of evidence addressing each point and that the Personal Representative will submit a written statement on his behalf.*

*The Tribunal President asked if the Detainee would like to make his oral statement under oath.*

Detainee: I am so confident of myself that I have no problems with taking the oath.

*The Recorder administered the Muslim oath to the Detainee.*

Detainee: I hope that my oath will have some weight with this Tribunal.

Tribunal President: You may begin.

*3.a.1. The Detainee is a member of al Qaida.*

Detainee: This is not true. It is impossible. I am surprised that they said that I am. Everybody who is here in the prison, are aware of the fact that I am not al Qaida.

ISN# 
Enclosure (3)
Page 2 of 8



UNCLASSIFIED

*3.a.2. The Detainee assisted members of the Egyptian Islamic Jihad through facilitation of movement out of Yemen and by obtaining them passports.*

Detainee: That is not true. I did not help anybody and whoever is saying that I did, let them present their evidence. If I know that somebody presented any evidence, then somebody can tell me what that evidence is so that I can respond to it. If there is any evidence at all.

*3.a.3. The Egyptian Islamic Jihad is a terrorist organization associated with al Qaida.*

Detainee: How does that concern me?

*3.a.4. The Detainee assisted members of the Al-Gama'a al-islamiyya.*

Detainee: That's not true. Again, whoever has any evidence to prove, let them present it. If somebody submitted any evidence, I'd like to take a look at it to find out if that evidence is true.

*3.a.5. The Al-Gama'a al-islamiyya is a designated foreign terrorist organization associated with al Qaida.*

Detainee: What business is it of mine? If that was part of the investigation or does it make it (my business)?

*3.a.6. The Detainee provided false passports to associates of Usama Bin Laden.*

Detainee: I don't know anybody that have followed Usama Bin Laden or anybody else. I did not help anybody with false passport or real passport. Whoever said that I did, let them present the evidence. These are all words and reports from the Embassy (inaudible). You are attorneys and you know the law and it applies to all evidence that you bring against me.

*3.a.7. The Detainee is associated with a convicted terrorist and visited him in prison.*

Detainee: This just in general, I don't know anybody in prison. That is not true and I don't what you mean by it. All of these that are not true and all the evidence against me, I don't know why they have these allegations against me and for whose benefits.

*3.a.8. The Detainee has had meetings with representatives of al Haramayn.*

Detainee: I don't know this organization and I don't know anyone in that organization, absolutely nobody.

*3.a.9. The Detainee arranged the release of imprisoned al Qaida members.*



UNCLASSIFIED//

Detainee: I don't know anyone who is a member of al Qaida and I am not a government to have the authority to release anybody from prison. How do I know it would be (inaudible)? That is not true.

*3.b. The Detainee supported military operations against the United States and its coalition partners.*

Detainee: This is a large allegation. I don't know how to start with this accusation. All events are obvious to you and whoever committed these crimes is known and they are in prison. If there was anybody of them, who spoke against me at that point in time, you should accuse him. Other than that, you have no right to accuse me. All that has been said about me is untrue, you can go back to all of them and say untrue, untrue, untrue. The cuffs are on my hands and I don't have freedom to move my hands (Detainee dropped his paperwork). That's what you are saying that I should have cuffs on, so I guess I'm going to have to stay with the cuffs on.

*3.b.1. The Detainee's brother was extremely close to those who conducted the terrorist attack on the U.S.S. Cole.*

Detainee: I repeat again. If there is any live conscience, that allegation is proof that all these allegations against me, I don't know how you obtained them or who gave them to you (inaudible). I hope that you can take that into consideration. I want to tell you something that I'd like you to understand. Supposing that my brother was and that's not true. If he had any connection to these people, how does that concern me? Number two and must important. If my brother knew these when he was a young person, he went to fight in Bosnia; without any of my family's approval when he was a very young man. Maybe he knew these guys in Bosnia. Then he came back to Yemen and stayed there for a while. Then went back to Bosnia to live there. That again was without our approval as well. We don't what happened until he got arrested and was jailed. He was in six years. He was in prison from 1997 up until the time I got jailed in the year 2002, my brother was still in jail. The meaning of that is that all connections between him and all the people was broken. How can he have any knowledge of all these acts, and the attacks took place in 2001? Don't you see that this allegation is unjust against me? You can measure this off the allegations as well, if you want to find out the truth. Unless the Tribunal was formed just to give a decision on keeping us here, I request that you look this evidence and my statement because you are looking for the truth. The future will determine.

*3.b.2. The Detainee possessed detailed knowledge of a planned terrorist attack on a U.S. embassy.*

Detainee: I don't know what is meant by that. Again, I don't know what is meant by that. Especially until the time I got imprisoned, I didn't know there was any attack on the U.S. Embassy. This allegation is in my favor and not against me.

*3.b.3. The Detainee possessed detailed knowledge of a terrorist attack against a western oil company.*



Detainee: Again, I say I don't know what they mean by that. Whoever made that accusation how did they know that? If they heard that from me, again it is considered as evidence in my favor. When I know information like that, I would contact the police or the security in Yemen so that the Yemeni government can take all necessary precautions. That should be considered as evidence for me and not against me. Will you allow me to speak more?

Tribunal President: Yes.

Detainee: Having read the definition of an Enemy Combatant in the letter that I received a few months ago, is anybody that helped al Qaida or is a supporter. I am a businessman. I have no connection to al Qaida or any terrorist organization. I have never joined in any task or operations and I was never an enemy to the United States or other countries. I did not fight America or anybody else. I will not be considered as an enemy to anybody. I will not fight anybody. I hate fighting from the bottom of my heart. This is not because I'm here today; this is a fact. My religion, which I respect, as you well know is the Muslim religion, they forbid such a thing. My country is against terrorist and terrorism. As I told you earlier, I hate terrorists and terrorism and I give you evidence that terrorism is against my personal beliefs as I am a businessman in Yemen. Eighty percent of my trade depends, as I'm an exclusive dealer for international companies. They come to Yemen to conduct business there. I help these companies to get all kinds of contracts and get business in Yemen. I receive some kind of commission from them. Which company do you think is going to come to Yemen if there was terrorist and terrorism in Yemen? All these international companies need stability so they can come there and conduct their business. Any of these terrorist or terrorist activities is against my trade. How can I be supporting terrorist or terrorism? I hope you consider that in your decision. I repeat, all of these attacks that shook the world, is bad. Whoever committed these crimes is known and they are here. Is there anyone of them, who accuses me that I had anything to do with all these events? At that point in time you people can go ahead and accuse him. Other than that, nobody has a right to accuse me of anything. Just because of the fact that I am a prisoner, (inaudible). And you know that the CIA depends on a lot of information and some of it is incorrect. These people make mistakes and they depend on other agents and pay them so much money and only suffer because of it. They bring some information to the CIA, and it is usually is incorrect so they can take as much money as possible. So myself and other people like me, we are the victims and the CIA could also be a victim because they concentrate their effort on people that don't have anything to do with the events. These people, once they give the information to the CIA sometimes they give the wrong information and they know that they are feeding them. I hope you consider all this information. I want to let you know that I am a father. Even though I am not important in the American people's eyes because I am a prisoner, I am very important to myself. My kids and my wife think that I am important as do my mother and family. I hope that you consider that. I've already spent 28 months. I am in prison without any reason for being there. Don't be confused and mislead by all these allegations. I swear that the truth is totally different. I have nothing to do with terrorist or terrorism. I have nothing to do with all the attacks, as I told you before. I want to let you know that I lost a lot of money in my



trade. I lost my place in the congress because of prison here. Don't you think that the time I have spent over here and the amount of money that I have lost and I lost the congress, don't that is a high price to pay? Don't you think that is a high price to pay? Don't you think that is a high price to pay? I apologize for taking too much of your time. I hope that you will be the people that will put an end to this situation so I can go back to my family. So I can live my life as a normal person. Don't be the cause for my continued imprisonment and give the CIA reason to keep me here. I hope so. Thank you.

Tribunal President: Does that conclude you statement?

Detainee: Yes.

Tribunal President: I'd like to at this point indicate that the only that we have seen about you to this point, is the Unclassified Summary. Would you be willing to answer some questions that we may have for you?

Detainee: If you ask questions that I know the answer to, I will answer.

Tribunal President: Thank you. Personal Representative, do you have any questions for the Detainee?

Personal Representative: Yes ma'am I do. I would just like to remind you that you had made a statement earlier when discussing with me, that you were a facilitator for the Yemeni Government?

Detainee: My Personal Representative is supposed to be with me. Not against me. Now he is talking like he is an interrogator. How can he be an attorney? I said all of these allegations were fabricated and I told you I had nothing to do with them. It's up to the Recorder or Reporter to respond or provide the proof. I'm afraid to say anything that you might use against me. As you know, there is no attorney here today and I don't know anything about the law. I don't know which of these statements are going to be used for me or against me. Whoever is representing the government needs to provide evidence.

Tribunal President: The Personal Representative is here simply just to help you and I don't know how it worked out in the translation, but the statement he made was not a negative one.

Detainee: I cannot say anything that can be used against me. I am even afraid to say what my name is.

Personal Representative: I was just trying to help him cover all the aspects of the response that he provided in his defense.

Detainee: All of my statements were accurate. Whatever you wanted to know I've already talked to you about. Nobody can mistreat me or get me counting or do you want me to, I'll count for everyone. You can condemn on something that I did against the United States or

ISN# 
Enclosure (3)
Page 6 of 8



UNCLASSIFIED//

anything or any mistakes I committed. But if you wanted to look at me from time of World War I and World War II, that is unreasonable. Any unclassified information that you have; you need to come up with the answer. Once you give me the unclassified accusation or allegation, I will respond to it.

Tribunal President: Is that all you have Personal Representative?

Personal Representative: I guess based on his response, I'm questioning rather or not he would want me to submit anything in writing or just stick with his oral statement.

Detainee: I'm not going to keep repeating myself. What I just told you is just re-hashing the situation. Anything else I say, I am afraid is going to be used against me. I hope that you can forgive me.

Tribunal President: Do I take that to mean that you don't wish to answer anymore questions?

Detainee: Are you looking for the truth or you going to be interrogators?

Tribunal President: Like I said, this is the only information we have on you and occasionally we do have questions to clarify some things.

Detainee: The are allegations that I am accused of. There should be some material evidence. Not just words. Anything that was fabricated (inaudible). If you are aware of the laws, you know what I'm talking about when I say material facts. Give me all the evidence then I will answer these questions. Other than that, anything I say might me used against me.

Tribunal President: Do you have any other evidence you would like to present to this Tribunal?

Detainee: You give me the evidence against all these allegations and then I will answer questions.

Tribunal President: We have shown you all the unclassified evidence that we can show you.

Detainee: These are only accusations and I have already told you that there is no truth in them. Whoever is saying that these are accurate, then come up with the proof. If there is no evidence then it's considered implied. You know the law

Tribunal President: Okay. At this point your Personal Representative would submit your written statement to us, or would you prefer that he does not do that?

Detainee: I don't want him to give you the document. I wanted to speak to you myself. I don't think that the information that the Personal Representative wrote down is accurate. I


ISN#
Enclosure (3)
Page 7 of 8


UNCLASSIFIED//

UNCLASSIFIED//

will talk you directly if you like. If there is anything that you don't understand, everything is all recorded and you can go back to it.

Tribunal President: Okay. Thank you.

*The Tribunal President confirmed that the Personal Representative had no further evidence to present and that the Detainee had no previously approved witnesses to present to the Tribunal and closed the open session.*

*The Tribunal President explained the remainder of the Tribunal process to the Detainee and adjourned the open session.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



Colonel, U.S. Army
Tribunal President

UNCLASSIFIED//

ISN#
Enclosure (3)
Page 8 of 8