UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABDULSALAM ALI ABDUL-RAHMAN AL-HELA,<br>　　　　　Petitioner,<br><br>　　　　　v.<br><br>BARACK OBAMA, *et al.*,<br>　　　　　Respondents. | Civil Action No. 05-1048 (RCL) |

## MEMORANDUM OPINION

Petitioner Abdulsalam Ali Abdul-Rahman Al-Hela ("petitioner"), a detainee at the United States Naval Base in Guantanamo Bay, Cuba ("Guantanamo") whose habeas petition is pending before this Court, asks that the government be ordered to show petitioner "the allegations made by the Government against him as well as the purported factual bases for the allegations." Upon consideration of petitioner's Motion [353] to that effect, respondents' Opposition and supplement to that Opposition, petitioner's Reply thereto, the entire record in this case, and the applicable law, the Court will DENY Petitioner's Motion [353].

### I.　　BACKGROUND

The government has submitted a "Factual Return" to justify petitioner's detention. The bulk of the Factual Return is devoted to its narrative section, which is supported by 63 exhibits. Though portions of the Factual Return are unclassified, most of it is classified, as are most of the exhibits to it. Petitioner's counsel may see the Factual Return and its exhibits, but asked the government to provide a less-redacted version of the return that petitioner would be allowed to see. The government decided that it could not provide a less-redacted version suitable for petitioner and instead provided a two-page document, titled "Summary of Basis for Detention," that gives a

broad overview of many (but not all) of the facts and allegations offered in support of petitioner's detention. The government said the Summary may be "discuss[ed]" with petitioner.

## II. ANALYSIS

Petitioner argues that the Summary is not an adequate substitute for his personal access to the Factual Return and its exhibits, and that without such access or an adequate substitute therefor, he will be deprived of the "meaningful opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law" to which he is entitled. *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (citation omitted) (internal quotation marks omitted).

One of petitioner's chief arguments in support of this proposition is that some habeas courts dealing with Guantanamo detainees have cited the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III §§ 1–16, as a model. Under CIPA, "the fundamental purpose of a substitution [is] to place the defendant, as nearly as possible, in the position he would be in if the classified information . . . were available to him." *United States v. Moussaoui*, 382 F.3d 453, 477 (4th Cir. 2004). But while courts have sometimes opted to use CIPA as a model for habeas cases, petitioner has offered no evidence that CIPA's substitution method should, must, or may be imported wholesale to detainee habeas cases. The D.C. Circuit has in fact disavowed this notion, stating that

> in the shadow of *Boumediene,* courts are neither bound by the procedural limits created for other detention contexts nor obliged to use them as baselines from which any departures must be justified. Detention of aliens outside the sovereign territory of the United States during wartime is a different and peculiar circumstance, and the appropriate habeas procedures cannot be conceived of as mere extensions of an existing doctrine.

*Al-Bihani v. Obama*, 590 F.3d 866, 877 (D.C. Cir. 2010). The Circuit has even said with respect to habeas that "where the source of classified information is 'highly sensitive, . . . it can be shown to the court . . . alone." *Khan v. Obama*, 655 F.3d 20, 31 (D.C. Cir. 2011) (quoting *Parhat v. Gates*,

532 F.3d 834, 849 (D.C. Cir. 2008)). In other words, CIPA is a potential source of guidance for habeas courts, not a rigid requirement.

Numerous cases confirm the lack of support for petitioner's argument that personal access is essential to a meaningful opportunity to contest detention. In *Mousovi v. Obama*, the court concluded that the government "[may] rely on Top Secret source-identifying information for which there is no adequate substitute and that cannot be released to Petitioner's counsel, even if it might assist his petition." 916 F. Supp. 2d 67, 68–69 (D.D.C. 2013). In *In re Guantanamo Bay Detainee Litig.*, the court concluded that petitioners would be permitted to review their own statements if such were included "in their respective classified factual returns," but noted that "the security risk from providing petitioners access to their own statements is not comparable to the risk from disclosing other classified information." 634 F. Supp. 2d 17, 23 (D.D.C. 2009) (footnote omitted). In this case, however, petitioner seeks access to information derived from other sources, and not merely to his own statements. In *Khan*, the petitioner's motion for unredacted access to some of the intelligence reports justifying his detention was denied "on the ground that the combination of the government's declaration and the in camera submission constitutes an 'effectiv[e] substitute for unredacted access' that ensures Khan the 'meaningful review of both the cause for detention and the Executive's power to detain' required by *Boumediene*." 655 F.3d at 31 (citing *Al Odah v. United States*, 559 F.3d 539, 547–48 (D.C. Cir. 2009)) (quoting *Boumediene*, 553 U.S. at 783). Indeed, the government provided no more disclosure, and possibly less, in *Khan*—where it "submitted to both the court and counsel a classified declaration explaining, to the extent possible without disclosing particularly sensitive classified information, how and by whom the reports had been prepared"—than it has here, where petitioner's counsel has actual access to the information in question. 655 F.3d at 25. Finally, though *Al Odah* clearly holds that a

court "may compel the disclosure of classified information" that is both relevant and material, it did so in a far less sensitive case than this one, where the party receiving the information would be cleared counsel rather than the petitioner himself. 559 F.3d at 544. Petitioner offers no case suggesting the D.C. Circuit has ever held that a habeas petitioner's right to such information includes personal access, and as stated previously, *Al Odah*'s allusion to CIPA did not set a floor for the government's disclosure obligations.

Thus, while petitioner would undoubtedly be better able to defend himself with personal access to the requested documents, the relevant question is not how best to equip petitioner, but rather whether the government's proposed disclosures and redactions are justified, and if so whether they deprive him of the meaningful opportunity to contest his detention guaranteed by *Boumediene*. The D.C. Circuit's previous approval of the use of classified evidence in habeas cases—even when no disclosure was made to defense counsel, let alone to the petitioner—demonstrates that lack of personal access does not per se violate *Boumediene*'s guarantee. Petitioner attempts to distinguish cases like *Khan* and *Mousovi* on the grounds that they presented the risk of disclosing intelligence sources and methods, whereas granting his request, he claims, would entail disclosing nothing more than the allegations against him. But revealing an allegation sometimes necessarily reveals the source or method from which it emerged.

Imagine two sailors and a captain adrift in a life raft with little food and water. The captain murders the weaker sailor so that he and the stronger one may last longer on their meager rations, dumps the body overboard, and swears the surviving sailor to secrecy. Several days later the pair is saved by a merchant ship. Shortly after their rescue, however, the captain is arrested for the murder of the weaker sailor. Will the captain suspect that the surviving sailor confessed, even if it is theoretically possible that forensic evidence on the raft or their clothes betrayed him? Of course.

And this hypothetical is more instructive than it might seem: Terrorist networks, like the governments that hunt them, may silo information or otherwise restrict access to it to prevent unapproved disclosure that could arise from human error, leaking, or capture. This feature of terrorist conspiracies could make it particularly easy for petitioner to identify the sources of the allegations against him, given that some of his alleged acts may have been known to only a few. The same logic applies to the risk that disclosing the allegations would also disclose intelligence methods—if, for example, petitioner had conducted certain operations on a particular cell phone and through no other medium, allegations regarding those operations would disclose that the U.S. government or its allies had been able to intercept communications on that phone, which could in turn suggest other communications they surreptitiously intercepted.

In addition to these general reasons for caution, respondents' ex parte supplement to their Opposition provides specific and persuasive reasons to believe that further disclosure of the allegations against petitioner and the factual bases therefor would risk revealing U.S. intelligence sources and methods. And though petitioner objects to the ex parte supplement, Judge Hogan specifically stated in the Protective Order governing detainee cases that "[n]othing herein requires the government to disclose classified information[,] . . . prohibits the government from submitting classified information to the Court *in camera* or *ex parte* in these proceedings or entitles petitioners or petitioners' counsel access to such submissions or information." Prot. Order ¶ 48(b).

Petitioner also contends that denying him personal access to the allegations deprives him of his right to "have the opportunity to present . . . evidence to a habeas court." *Boumediene*, 553 U.S. at 790. But the right to present evidence and the right to see it are different; if they were not, the *Khan* court could not have ruled that sufficiently sensitive evidence may be withheld from a habeas petitioner entirely and shown to the habeas court alone. 655 F.3d at 31. Without belittling

the challenge petitioner and petitioner's counsel face in crafting a defense against allegations they cannot discuss, his right to present evidence survives, and to the extent that right is diminished, it is so in order to accommodate respondents' "legitimate interest in protecting sources and methods of intelligence gathering . . . to the greatest extent possible." *Boumediene*, 553 U.S. at 796. The same is true with respect to petitioner's claim that the disclosure restrictions impede his access to his counsel and his ability to communicate with them.

**CONCLUSION**

As the *Al-Bihani* court said, "[t]he habeas judge is not asked, as he would be in a trial, to administrate a complicated clash of adversarial viewpoints to synthesize a process-dependent form of Hegelian legal truth." 590 F.3d at 880. The back-and-forth of a full dress adversarial proceeding cannot be made completely available in habeas where, as here, the needs of national security clearly preclude disclosure to the petitioner, and where counsel's access to the allegations and evidence against him provides the requisite opportunity to contest his detention. For the foregoing reasons, the Court will DENY petitioner's Motion to Compel. A separate ORDER consistent with this Memorandum Opinion shall issue this date, May 12, 2016.

_____
ROYCE C. LAMBERTH
United States District Judge